UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JORDAN BRENDEN,

                             Plaintiff,

vs.                                            5:23-cv-539
                                                   (ECC/ML)
FELIX CASTRO, Individually, SEAN
BUTLER, Individually, and JOHN DOES 1-3,

                             Defendants.
_____

**Appearances:**

Amy L. Bellantoni, Esq., *for Plaintiff*
Amanda Kuryluk, Asst. Att'y General, *for Defendants Castro and Butler*

**Hon. Elizabeth C. Coombe, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

      Plaintiff Jordan Brenden filed this action pursuant to 42 U.S.C. § 1983 against Defendants Felix Castro, Sean Butler, and John Does 1-3 alleging violations of his Fourth, Fifth, and Fourteenth Amendment rights arising out of the seizure and destruction of his handgun as well as his prosecution for possession of that handgun. Amended Complaint (AC), Dkt. No. 11. Presently before the Court is the named Defendants' motion for summary judgment. Dkt. No. 31. The motion is fully briefed. Dkt. Nos. 31-2, 35-14, 38. For the following reasons, the motion is granted in part and denied in part.

**I.    BACKGROUND**[1]

      Since 2008, Plaintiff has served as a military police officer in both the United States Army

---

[1] The following facts are drawn from the Defendants' Statement of Undisputed Material Facts (Def. SUMF), Dkt. No. 31-1, and Plaintiff's Statement of Additional Facts and Counterstatement of Facts (Pl. Stat.), 35-13, to the extent those facts are well-supported by citations to the record, as

and the Army National Guard. Pl. Stat. ¶¶ 52–54. In 2017, Plaintiff applied to become a New York State Police Trooper, deferring his application until 2019, Def. SUMF ¶ 1, when he was honorably discharged from the Army and joined the Army National Guard. Pl. Stat. ¶ 53.

Defendant Castro is an Investigator with the New York State Police. Castro Deposition at 10:21–23, 13:13–16, Dkt. No. 31-5. In late 2021, Castro was assigned to conduct Plaintiff's background investigation and interview. Def. SUMF ¶ 2.

Before his interview, Plaintiff completed and submitted a detailed application including a background questionnaire. Def. SUMF ¶ 3. Plaintiff's application also included his Army identification and military police badge with his officer number. Brenden Deposition (Brenden Dep.) at 46:10–20, Dkt. No. 31-4. The Army identification did not identify Plaintiff as a military police officer, and the badge did not have his photograph. Dkt. No. 35-3 at 2. Plaintiff's application also stated that he possessed a Smith & Wesson M & P .40 caliber handgun at his home. Def. SUMF ¶¶ 4, 6. Castro confirmed that Plaintiff had not registered the handgun in the county where he lived. *Id.* at ¶ 7.

On November 24, 2021, Plaintiff attended his background interview at a State Police station. Def. SUMF ¶ 8. During the interview, Castro confirmed that Plaintiff's handgun was at his home, not stored or carried on a military base or installation. *Id.* at ¶ 9. When asked for a license or permit for the handgun, Plaintiff gave Castro a Federal Law Enforcement Officers Safety Act ("LEOSA") credential issued by the Army that expired nearly five months earlier on June 30, 2021. *Id.* at ¶ 11; Brenden Dep. at 48:21–23. Castro asked Plaintiff for documentation that he legally possessed the handgun, such as an unexpired LEOSA credential or a New York State Pistol

---

well as the attached exhibits. Citations to page numbers refer to pagination generated by the ECF system.

2

permit. Def. SUMF ¶ 15. Plaintiff did not have any additional documentation and later that day called Castro to confirm that he did not possess an unexpired LEOSA credential. *Id.* at ¶ 19.

On November 29, 2021, Castro and another State Police investigator drove to Plaintiff's home intending to secure Plaintiff's handgun. Def. SUMF ¶ 28. Plaintiff "greeted them at the door," Castro asked "if he could come in," and Plaintiff "stated to him that, because he was conducting his house visit or a house visit had to be conducted, yes, he was allowed to . . . come in." Brenden Dep. at 59:23–60:4; *see also id.* at 67:14–17 (explaining that Plaintiff allowed the investigators into his house to complete his background investigation). Plaintiff did not ask the investigators to leave or state that he did not want them in his house. Def. SUMF ¶¶ 33–34.

While Castro was in the house, Plaintiff called his Sergeant Major, and "engaged in a conversation while on speaker in Castro's presence." Pl. Stat. ¶ 83. During that phone call, Plaintiff told his Sergeant Major that "Castro was at his home inquiring about a pistol he had purchased using his LEOSA credentials in a previous duty station" and that "Castro had a concern that LEOSA did not cover National Guard members." *Id.* at ¶ 84. The Sergeant Major told Castro that "LEOSA covers Plaintiff," and that if Castro or the State Police needed the handgun to be held at a military base it could be. *Id.* at ¶ 87.

Castro then told Plaintiff that he did not need a warrant to seize the handgun. Pl. Stat. at ¶ 88. Castro later told Plaintiff that he needed to secure Plaintiff's handgun for "safekeeping" because Plaintiff would have to turn his handgun over when he entered the State Police academy. *Id.* at ¶ 91. Plaintiff led the investigators down to the basement where he stored the handgun, unlocked its storage safe, and gave it to Castro. Def. SUMF ¶ 35. According to Plaintiff, he assumed "that [his] weapon was being taken as safekeeping." Brenden Dep. at 71:21–72:8. Plaintiff then signed a form acknowledging that the State Police would take his handgun. Def.

SUMF ¶ 36.

On December 1, 2021, Castro called Plaintiff and told him to come to the State Police station where he had been interviewed. Def. SUMF ¶ 44. After Plaintiff arrived, Castro told him that he was under arrest for Criminal Possession of a Firearm in the Fourth Degree. *Id.* After pleading not guilty, Plaintiff received an adjournment in contemplation of dismissal in February of 2022. *Id.* at ¶ 50; Dkt. No. 31-8. His charge was dismissed and then sealed under NYS Criminal Procedure Law § 160.50 in August 2022. Pl. Stat. ¶ 100.

The State Police denied Plaintiff's application and told him that he was longer able to become a State Police Trooper. Brenden Dep. at 99:18–22. Plaintiff later applied to—and did not receive—positions at several state and federal law enforcement organizations. *See id.* at 99:22–100:3.

After submitting a final draft of Plaintiff's background report on December 14, 2021, Castro was not involved with Plaintiff's application. Def. SUMF ¶ 48. The handgun was in State Police evidence lockers until it was destroyed in September 2022. *Id.* at ¶¶ 38–39; Dkt. No. 35-10.

## II.   STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), summary judgment may be granted only if all the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. A fact is material if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could

4

return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*). The movant may meet this burden by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *Selevan v. N.Y. Thruway Auth.*, 711 F.3d 253, 256 (2d Cir. 2013) (explaining that summary judgment is appropriate where the nonmoving party fails to "'come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on' an essential element of a claim") (quoting *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 509 (2d Cir. 2010)).

If the moving party meets this burden, the nonmoving party must "set forth specific facts showing a genuine issue for trial." *Anderson*, 477 U.S. at 248, 250; *see Celotex*, 477 U.S. at 323–24; *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003). Still, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986) (citing *Quarles v. Gen. Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985)). Further, "mere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995)) (cleaned up).

## III.     DISCUSSION

Plaintiff alleges the following claims: (1) false arrest, (2) malicious prosecution, (3) unreasonable search and seizure, (4) "stigma plus," and (5) unlawful taking of property without just compensation. AC ¶¶ 57–66.

### A.     Defendant Butler

Defendant Butler seeks summary judgment dismissing the Amended Complaint as it relates to him, and Plaintiff "withdraws his claims against defendant Sean Butler." Plaintiff's Memorandum of Law (Pl. Mem.) at 6 n.1, Dkt. No. 35-14. Accordingly, summary judgment is granted for Defendants as to all claims against Butler.

### B.     False Arrest

Defendants argue that they are entitled to summary judgment on Brenden's false arrest claim because there was probable cause to arrest Brenden and, even if there were not probable cause, Castro is entitled to qualified immunity. Defendants' Memorandum of Law (Def. Mem.) at 22–24, 32–33, Dkt. No. 31-2. Plaintiff responds that Castro lacked probable cause or arguable probable cause because he knew that Brenden was a qualified law enforcement officer when he was arrested. Pl. Mem. at 15–16, 23–24.

To establish a § 1983 claim for false arrest, a plaintiff must demonstrate that: (1) "the [o]fficers intended to confine him," (2) he was "conscious of the confinement and did not consent to it," and (3) "the confinement was not otherwise privileged." *Berg v. Kelly*, 897 F.3d 99, 106 (2d Cir. 2018). The existence of probable cause defeats a false arrest claim. *See Kee v. City of New York*, 12 F.4th 150, 158 (2d. Cir. 2021).

Police officers are entitled to qualified immunity "unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established

at the time.'" *District of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). "For the law to be clearly established, it is not necessary to identify a case directly on point." *Mara v. Rilling*, 921 F.3d 48, 68 (2d Cir. 2019). "But precedent must have spoken with sufficient clarity to have placed the constitutional question at issue beyond debate." *Id.* An officer "is entitled to qualified immunity against a suit for false arrest if he can establish that he had arguable probable cause to arrest the plaintiff." *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2014) (quotation omitted). "Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Id*. (quotation omitted).

"It is well established that a police officer aware of facts creating probable cause to suspect a prima facie violation of a criminal statute is 'not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest.'" *Garcia*, 779 F.3d at 93 (quoting *Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001)). "Whether or not a suspect ultimately turns out to have a defense, or even whether a reasonable officer might have some idea that such a defense could exist, is not the question." *Id.* at 96 (citing *Curley*, 268 F.3d at 70). Rather, an "officer still has probable cause to arrest, and certainly is entitled to qualified immunity, so long as any such defense rests on . . . a legal theory that is not so clearly established, that it cannot be said that any reasonable officer would understand that an arrest under the circumstances would be unlawful." *Id.* (citation omitted).

Here, Castro was aware of facts creating probable cause, or at least arguable probable cause, to suspect a prima facie violation of a criminal statute because he knew that Castro possessed the handgun. Castro was also aware of facts that eliminated the possible affirmative

7

defense that Plaintiff was exempt from the New York State licensing requirement under LEOSA, 18 U.S.C. §§ 926B and 926C.[2] LEOSA creates a federal exception to state firearm permit requirements for current and retired law enforcement officers. As relevant here, § 926B(a) states that "[n]otwithstanding any other provision of the law of any State . . . an individual who is a qualified law enforcement officer and who is carrying the identification required by subsection (d) may carry a concealed firearm that has been shipped or transported in interstate or foreign commerce." Section 926B(d) requires "photographic identification issued by the governmental agency for which the individual is employed that identifies the employee as a . . . law enforcement officer of the agency."

Neither Plaintiff's Army identification nor his military badge met LEOSA's requirements because the Army identification does not identify Plaintiff as a military police officer, and the military police badge does not have his photograph. Dkt. 35-3 at 2. Even if a credential issued pursuant to Army Directive 2015-03—like the one Plaintiff presented to Castro—were a sufficient basis for exemption from the state licensing requirements,[3] Plaintiff did not, and could not, present an unexpired credential. Plaintiff has not identified any decisions issued by the Second Circuit, any courts in this Circuit, or any New York State court supporting the position that an expired Army LEOSA credential or a general Army identification may satisfy § 926B, and the Court has not identified any such cases. As a result, Plaintiff relies on "a legal theory that is not so clearly

---

[2] Under New York State law, when licensure or another exemption to a criminal statute is found outside the statute, licensure is an affirmative defense. *People v. Washington*, 209 A.D.2d 162, 163 (1st Dep't 1994) (citing *People v. Kohut*, 30 N.Y.2d 183, 187 (1972) *aff'd*, 86 N.Y.2d 853 (1995)); *see People v. David*, 41 N.Y.3d 90, 96 (2023) (discussing how exemptions relate to affirmative defenses under New York criminal weapon possession statutes).

[3] Army Directive 2015-03 provides that LEOSA credentials "will be valid for 5 years from the date of issuance," and holders "are required to renew their credential[s]."

established, that it cannot be said that any reasonable officer would understand that an arrest under the circumstances would be unlawful." *Garcia*, 779 F.3d at 96. Given the unsettled state of the law, officers of reasonable competence could disagree about whether the probable cause test was met. *Id.* at 92. Accordingly, there is arguable probable cause, Castro is entitled to qualified immunity, and the motion for summary judgment is granted on Plaintiff's false arrest claim.

### C.    Malicious Prosecution

Defendants argue that they are entitled to summary judgment on Plaintiff's malicious prosecution claim because probable cause existed, and Castro is entitled to qualified immunity. Def. Mem. at 27, 32–33. Plaintiff responds that summary judgment is not appropriate because it was apparent that probable cause did not exist when Plaintiff's prosecution began. Pl. Mem. at 16–17, 22–23. As with the false arrest claim, Castro is entitled to summary judgment on the malicious prosecution claim because he is protected by the qualified immunity doctrine.

To establish a malicious prosecution claim, a plaintiff must prove "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (quotation omitted).

The "existence of probable cause is a complete defense to a malicious prosecution claim." *Cornelio v. Connecticut*, 32 F.4th 160, 178–79 (2d Cir. 2022). "'[E]ven when probable cause is present at the time of arrest, evidence could later surface which would eliminate that probable cause. In order for probable cause to dissipate, the groundless nature of the charge must be made apparent by the discovery of some intervening fact.'" *Alberty v. Hunter*, 144 F.4th 408, 418 (2d Cir. 2025) (quoting *Kinzer v. Jackson*, 316 F.3d 139, 144 (2d Cir. 2003)). The same analysis

applies for arguable probable cause. *See Bornschein v. Herman*, 304 F. Supp. 3d 296, 303 (N.D.N.Y. 2018) (noting that an "officer is entitled to qualified immunity on claims of false arrest and malicious prosecution where he had arguable probable cause to arrest or prosecute") (internal quotations and citations omitted).

No intervening fact affected arguable probable cause; Castro is protected by the doctrine of qualified immunity; and summary judgment is therefore granted on Plaintiff's malicious prosecution claim.

    **D.**    **Stigma-Plus**

Defendants argue that they are entitled to summary judgment on Plaintiff's stigma-plus claim because Plaintiff cannot show any material state-imposed burden on his rights and, in the alterative, Castro is entitled to qualified immunity. Def. Mem. at 28–29, 32–33. Plaintiff responds that his failure to obtain government employment is a material state-imposed burden. Pl. Mem. at 19. Plaintiff has not established a material state-imposed burden, and, in the alternative, Castro is entitled to qualified immunity.

To make out a "stigma-plus claim," a plaintiff must show "(1) the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false, and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights." *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004) (quotation omitted).[4] The burden or alteration must be a "tangible interest" such as dismissal from a government job. *Patterson v. City of Utica*, 370 F.3d 322, 330 (2d Cir. 2004). When "the loss

---

[4] A "stigma-plus" claim is a Fourteenth Amendment due process claim, *see Donato v. Plainview-Old Bethpage Cent. Sch. Dist.*, 96 F.3d 623, 630 (2d Cir. 1996) (analyzing a stigma plus claim under the Fourteenth Amendment), not a Fourth Amendment-based claim as Plaintiff alleged in the Amended Complaint, *see* AC ¶ 62.

of job prospects is merely a 'normal repercussion of a poor reputation,' it cannot be the basis for a stigma-plus claim." *Cohane v. Nat'l Collegiate Athletic Ass'n*, 612 F. App'x 41, 44 (2d Cir. 2015) (summary order) (quoting *Valmonte v. Bane*, 18 F.3d 992, 1001 (2d Cir. 1994)) (cleaned up).

Here, Plaintiff has offered no evidence that he was deprived of a cognizable tangible interest. His failure to obtain new public employment cannot be the basis for a stigma-plus claim. *Cohane*, 612 F. App'x, at 44. Accordingly, Castro is also entitled to qualified immunity. *See District of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018) (noting that "officers are entitled to qualified immunity under § 1983 unless . . . they violated a federal statutory or constitutional right"). Defendant's motion for summary judgment on the stigma-plus claim is therefore granted.

**E.      Takings**

Defendants argue that Castro is entitled to qualified immunity on Plaintiff's takings claim. Def. Mem. at 32–33. Plaintiff responds that a taking occurred when Castro seized his handgun, and that Castro is not entitled to qualified immunity. Pl. Mem. at 20–23. Castro is entitled to qualified immunity on this claim.

A § 1983 takings claim arises when the government "takes property without compensation." *Knick v. Twp. of Scott, Pennsylvania*, 588 U.S. 180, 202 (2019). A physical taking, like the claim here, occurs when the government "physically takes possession of property without acquiring title to it." *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 147 (2021). The Takings Clause "protects 'private property' without any distinction between types," and personal property—such as a handgun—is not "any less protected against physical appropriation than real property." *Horne v. Dep't of Agric.*, 576 U.S. 350, 358 (2015); *see Frein v. Pa. State Police*, 47 F.4th 247, 251 (3d Cir. 2022)) (holding that plaintiffs stated a takings claim by alleging that the government took their guns without just compensation).

11

Plaintiff sued Castro in his individual capacity. There is an "absence of case law establishing that [t]akings claims may be brought against individuals." *Herman v. Town of Cortlandt, Inc.*, No. 18-cv-2440, 2023 WL 6795373, at *4 (S.D.N.Y. Oct. 13, 2023). In fact, "[t]here does not appear to be 'any circuit court that has explicitly held that a takings action can be brought against a state official in an individual capacity.'" *Id.* (quoting *Hinkle Family Fun Ctr., LLC v. Grisham*, No. 22-2028, 2022 WL 17972138, at *4 n.2 (10th Cir. Dec. 28, 2022) (collecting cases); *see also Apple Hill Solar LLC v. Cheney*, No. 2:23-cv-644, 2024 WL 3925912, at *4–5 (D. Vt. Aug. 23, 2024) (concluding that a plaintiff may not bring a takings claim against a government official in his individual capacity). Therefore, Castro is entitled to qualified immunity because it was not clearly established that individual defendants could be liable on a takings claim. *See Novak v. Federspiel*, 140 F.4th 815, 821 (6th Cir. 2025) (concluding that defendant in a takings claim involving a firearm was "entitled to qualified immunity in his individual capacity" because "individual liability for takings claims is not clearly established") (internal quotations omitted). Summary judgment is therefore granted on Plaintiff's takings claim.

### F.     Unreasonable Search and Seizure

Finally, Plaintiff claims that Castro conducted an unreasonable search and seizure when he entered Plaintiff's home and took his handgun. Defendants present three alternative arguments: (1) Plaintiff invited Castro into his home and then voluntarily gave him the handgun, (2) Castro had probable cause to enter Plaintiff's home and seize the handgun, or (3) Castro is entitled to qualified immunity. Def. Mem. at 18–22, 32–33. Plaintiff responds that he only allowed Castro into his home because he believed that Castro was there to conduct a home inspection related to the State Police application. Pl. Mem. at 15. Plaintiff also argues that Castro did not have probable cause for a warrant and Plaintiff turned over his handgun because Castro told him that it was for

"safekeeping" and Castro "'did not need a warrant.'" *Id*.

"It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006) (quotations omitted). This warrant requirement is subject to "certain exceptions," such as "consent of an authorized person." *United States v. Snype*, 441 F.3d 119, 130 (2d Cir. 2006). "Consent may be express or implied." *United States v. Iverson*, 897 F.3d 450, 458 (2d Cir. 2018). Consent must be voluntary and not coerced by "explicit or implicit means, by implied threat or covert force." *United States v. Cacace*, 796 F.3d 176, 189 (2d Cir. 2015) (quotation omitted). Whether consent is voluntary "is a question of fact to be determined from the totality of all the circumstances." *United States v. O'Brien*, 926 F.3d 57, 76 (2d Cir. 2019) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973)).

Courts have found that consent is not voluntary where "the person whose consent is sought is left with the impression that his consent cannot be lawfully withheld." *United States v. Montes-Reyes*, 547 F. Supp. 2d 281, 287 (S.D.N.Y. 2008).

Here, Defendants are not entitled to summary judgment on Plaintiff's Fourth Amendment claim for unreasonable search and seizure. First, the existence of probable cause for the search and seizure is not relevant to the question of whether entering a home without a warrant is lawful. *United States v. Price*, 345 F.2d 256, 259 n.2 (2d Cir. 1965) (noting that "'belief, however, well founded, that an article sought is concealed within a dwelling house, furnishes no justification for a search of that place without a warrant . . . notwithstanding facts unquestionably showing probable cause'") (quoting *Agnello v. United States*, 269 U.S. 20, 33 (1925)). Second, viewing the evidence in the light most favorable to Plaintiff, Castro told Plaintiff that he did not need a warrant. As a result, there is a genuine issue of material disputed fact about whether Plaintiff gave his consent

for the search and seizure of the handgun or Plaintiff merely acquiesced to Castro's claim of lawful authority. *See Bumper v. North Carolina*, 391 U.S. 543, 548–49 (1968) (noting that the burden of proving that consent was voluntarily given "cannot be discharged by showing no more than acquiescence to a claim of lawful authority").

Castro is also not entitled to qualified immunity because it is clearly established that a false claim of lawful authority can invalidate consent. *See id; Amos v. United States*, 255 U.S. 313, 317 (1921) (holding that Fourth Amendment rights cannot be waived by admitting into a home "government officers, who came, without warrant, demanding admission to make search of it under government authority"); *United States v. Price*, 599 F.2d 494, 503 (2d Cir. 1979) ("Mere acquiescence to lawful authority or submission to express or implied coercion cannot validate a search."). The motion for summary judgment is therefore denied as to this claim.

### G.     The Doe Defendants

Finally, Plaintiff has asserted claims against John Doe 1–3. AC ¶ 6. Plaintiff filed this case more than two years ago, but Plaintiff has not identified the Doe Defendants or served them. *See* Dkt. No. 1. Discovery closed nearly a year ago on August 1, 2024. Dkt. No. 26. Accordingly, Plaintiff is directed to prosecute this suit against John Doe 1–3 or the Doe Defendants will also be dismissed under Federal Rule of Civil Procedure 41(b). *See Le Sane v. Hall's Sec. Analyst, Inc.*, 239 F.3d 206, 209 (2d Cir. 2001) (noting that Rule 41(b) "gives the district court authority to dismiss a plaintiff's case *sua sponte* for failure to prosecute"); *Jones v. Rock*, No. 9:12-cv-0447 (NAM/TWD), 2015 WL 791547 at *21 (N.D.N.Y. Feb. 24, 2015) (dismissing Doe defendants under Rule 41(b)); *A'Gard v. Locke*, No. 9:14-cv-0613 (GTS/DEP), 2016 WL 5137273, at *2, *5 (N.D.N.Y. Sept. 21, 2016) (same). If Plaintiff fails to advance this case against the Doe Defendants by October 10, 2025, the Doe Defendants will be dismissed.

IV. **CONCLUSION**

For these reasons, it is hereby

**ORDERED** that Defendants' motion for summary judgment pursuant to Rule 56, Dkt. No. 31, is **DENIED IN PART** and **GRANTED IN PART**; and it is further

**ORDERED** that Defendants' motion for summary judgment is **DENIED** as to Plaintiff's unreasonable search and seizure claim; and it is further

**ORDERED** that Defendant's motion is **GRANTED** in all other respects; and it is further

**ORDERED** that the Clerk is directed to terminate Defendant Butler; and it is further

**ORDERED** that unless Plaintiff moves to amend the complaint by October 10, 2025 to name Defendants John Doe 1–3, these Defendants will be terminated; and it is further

**ORDERED** that the Clerk shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: September 26, 2025

Elizabeth C. Coombe
U.S. District Judge